

**U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS**

**ENTERED**

**TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET**



**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 19, 2006**                 **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| IN RE: § | |
| § | |
| ANTHONY ADELL TAYLOR, § | CASE NO. 06-30952-BJH-13 |
| § | |
| D E B T O R. § | |

**MEMORANDUM OF OPINION**

**Introduction**

Before the court for consideration is confirmation of the Debtor's Chapter 13 Plan [Docket Entry # 2] and an Objection to same [Docket Entry # 16] filed by creditor Credit Union of Texas ("CUT"). The court held a hearing on May 25, 2006, and upon the evidence and arguments presented, the court rules as follows:

**Jurisdiction**

The court has jurisdiction over these matters pursuant to 28

U.S.C. §§ 1334 and 157. This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A), (L), and (O). This memorandum opinion encompasses the court's findings of facts and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. Where appropriate, a finding of fact shall be construed as a conclusion of law and vice versa.

**Facts**

Anthony Adell Taylor (the "Debtor") filed for bankruptcy protection on March 6, 2006. Thus, his case is governed by the Bankruptcy Code as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), most of the provisions of which became effective in cases filed on and after October 17, 2005.

It is undisputed that CUT is a secured creditor of the Debtor, secured by a purchase money security interest in the following vehicle: a 2004 Chrysler Sebring, VIN 1C3EL46X24N240740. It is also undisputed that the Debtor incurred the debt to CUT within 910 days of the petition date. CUT filed a proof of claim asserting a total claim in the case of $20,143.04. However, the Debtor's Plan, as originally filed, not only contemplated that CUT would have a total allowed claim of $18,848.00, but the Plan also bifurcated such claim into a

$9,063.00 secured claim (the alleged value of the vehicle) and a $9,785.00 unsecured deficiency claim (the difference between the Debtor's computation of the amount owed to CUT and the alleged value of the vehicle).  Moreover, the Plan provided for CUT's secured claim of $9,063.00 to be paid over approximately 47 months, at a rate of 6% per annum, with the proposed unsecured deficiency claim of CUT to be paid *pro rata* with other unsecured creditors (and it is uncertain if there will be any dividend paid to unsecured creditors).  The rate of interest that was set forth in the Retail Installment Contract between the Debtor and CUT was 17.9% per annum.

On April 19, 2006, CUT filed its objection to the Plan.  CUT argued, in summary, that the Debtor's Plan violated 11 U.S.C. § 1325(a)(5)(B)(ii) and the "dangling paragraph" following 11 U.S.C. § 1325(a)(9), by:  (a) attempting to bifurcate the claim of CUT into a secured and an unsecured claim (*i.e.,* the Plan implemented a "cram down" on CUT's secured claim to the value of the vehicle, rather than paying the full amount of the claim); and (b) not paying an appropriate rate of interest on CUT's claim over the life of the Plan.  With respect to the latter issue, CUT argued that the "formula approach" for a rate of interest, as set forth in the Supreme Court's decision in *In re Till*, 541 U.S.

465, 124 S. Ct. 1951, 158 L.Ed.2d 787 (2004), that is to be provided in a Chapter 13 plan to the claim of a creditor with a purchase money security interest in a motor vehicle, has not been abrogated by BAPCPA and applies with respect to those debts incurred within the 910-day period preceding the petition date, pursuant to certain new provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") (*i.e.*, pursuant to that certain so-called "dangling paragraph" following 11 U.S.C. § 1325(a)(9); hereinafter the "910-day provision").

On May 25, 2006, the court heard arguments of counsel for the parties (the facts being basically stipulated). By the time of the hearing, the Debtor had agreed not to bifurcate CUT's claim and the parties agreed to the size of CUT's claim. Thus, the remaining legal issue was what was an appropriate rate of interest to pay to CUT on its full claim over the life of the Plan. CUT took the position that some rate adjustment over the prime rate of interest is appropriate in this case (rather than the 6% offered by the Debtor).[1] The only evidence as to the creditworthiness of the Debtor offered at the hearing was that the Debtor had some history of being behind on car payments at

---

[1] The prime rate was 8% at the time of the hearing. By the time of the hearing, the Debtor had agreed to pay the prime rate of interest to CUT.

4

the petition date (as is often the case with Chapter 13 debtors), but the exact amount of prepetition arrearages on the car loan was not in evidence (the parties thought that the Debtor had been two to three months behind as of the petition date). There was also evidence offered (through representations of counsel) that the Debtor had been behind on his home mortgage payments prepetition. The Chapter 13 trustee took no position with regard to the proper rate of interest that should be paid by the Debtor to CUT and had no objections to the Plan generally.

The court took this matter under advisement, as it knew that an opinion of Judge Harlin D. Hale of this district was due out imminently involving the identical issue presented herein, and the court wanted the opportunity to review and consider Judge Hale's opinion for the sake of consistency within the district.

**Issue**

Whether the "formula approach" for a rate of interest, as set forth in the Supreme Court's decision in *In re Till*, 541 U.S. 465, 124 S. Ct. 1951, 158 L.Ed.2d 787 (2004), that is to be provided in a Chapter 13 plan to the claim of a creditor with a purchase money security interest in a motor vehicle, has been abrogated or still applies with respect to those claims in Chapter 13 to which the 910-day provision of BAPCPA applies.

5

**Answer**

*Till* applies.

**Analysis**

This court believes that there is no reason to reinvent the wheel and write a lengthy opinion on the issue presented, in light of Judge Hale's very well-reasoned opinion in *In re Bufford*, --- B.R. ---, 2006 WL 1677160 (Bankr. N.D. Tex. June 13, 2006). Like Judge Hale, this court believes that while Section 506(a) can no longer be used to bifurcate 910-day-old-or-less undersecured car claims into a secured claim and an unsecured claim, and the secured creditor must be given a claim for the entire amount remaining due under the contract loan documents as of the petition date, Section 1325(a)(5)(B)(ii) still determines the *value* on account of such claim that is to be distributed under the plan—and that *value* is still controlled by *Till*. Congress did not give any indication in drafting the 910-day provision that it intended to overrule *Till*. Thus, this court holds that the holding in *Till* has not been disturbed by the 910-day provision added by BAPCPA and *Till* still controls what interest rate is to be applied to ensure present value is realized by the creditor pursuant to 11 U.S.C. § 1325(a)(5)(B)(ii).

The court notes that there is very little evidence in the record from which to apply the "formula approach" here. However, there was enough evidence to suggest that the prime rate is not sufficient and some upward adjust is needed to account for the fact that this Debtor is some credit risk to CUT (given the past payment history on his home mortgage and his car loan). A 1% to 3% adjustment is typically utilized in these situations, and both parties hinted at the hearing that, if *Till* was held to apply, they might consider an adjustment rate somewhere right in between 1% and 3%. The court will consider this as evidence of what reasonable parties might consider the appropriate adjustment rate to be with regard to this particular Debtor, and the court will find that a 1.5% adjustment over prime (or 9.5% per annum) is an appropriate rate of interest to pay CUT under the facts of this case.

## Conclusion

The court will deny confirmation of the plan. The court will issue a separate Order consistent with this opinion. The court will further require that the Debtor, if he wants to go forward with a Chapter 13 reorganization, file an amended plan in compliance with this decision (or as otherwise agreed by the parties) within 20 days of the date of entry of the order

implementing this opinion.

###END OF MEMORANDUM OF OPINION###